UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INTERPARFUMS LUXURY BRAND, INC.,
*a New York corporation*,

    *Plaintiff*,

v.

RENEE GABET and ANNIE OAKLEY
ENTERPRISES, INC.,
*an Indiana corporation*,

    *Defendants*.

Case No. 1:23-cv-6269 (PKC)

---

**STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

It is hereby stipulated and agreed, by and between the parties in the above-captioned action as follows:

This Stipulation shall govern the production of documents and electronically stored information ("ESI"). This Order shall supplement the Federal Rules of Civil Procedure, this Court's Individual Practices, and any other applicable orders and rules. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith. This stipulation shall not be used in considering Defendants' pending motion to dismiss or transfer this case (Dkt. 21).

1.  **DEFINTIONS**

    a.  "Party" means a named party in this case.

    b.  "Parties" means all named parties in this case.

    c.  "Action" means the above-captioned matter.

d. "Document" and "Documents" shall have the same meaning and scope as used in Local Civil Rule 26.3 and the Federal Rules of Civil Procedure 26 and 34.

e. "Email" means electronic means for sending, receiving and managing communications via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, Yahoo Mail, or Lotus Notes, and the file created or received by such means, including attachments.

f. "ESI" means electronically stored information.

g. "Extracted Text" means the text extracted from a Native Format file and includes at least all header, footer and document body information that are available.

h. "Load File" means an electronic file that is used to import all required production information into a document database, including document images, Extracted Text and/or OCR text, Native Format files where required, and Metadata, as well as information indicating document and page breaks, and document relationships such as those between an Email and its attachments and a document and information related to embedded content.

i. "Metadata" means information associated with or about an electronic file that is created by the file system or application and embedded in the electronic file, including information not ordinarily viewable or printable from the application that generated, edited, or modified such electronic file. The Metadata fields of an electronic file may describe, *inter alia*, the characteristics, origins, usage, and validity of the electronic file.

j. "Native Format" means the format of ESI in the application in which such ESI was stored and/or was originally created.

k.      "OCR" means the optical character recognition technology used to read paper documents and electronic images of documents and output them to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

l.      "Producing Party" means a Party in the Action that produces Documents or ESI.

m.      "Receiving Party" means a Party in the Action to whom Documents or ESI are produced.

n.      "Search Term" means a single word or combination of words used to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

## 2.   GENERAL PROVISIONS

### a.   Proportionality

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues.

### b.   Preservation of Discoverable Information

A party has an obligation to take reasonable and proportional steps to preserve discoverable information and documents in the possession, custody or control of the party or its affiliates, including entities it owns, is owned by, or is under common own control with.

(i)      Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

   (ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

3. **SEARCH**

  The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The parties will limit custodians to no more than seven (7) people absent a good cause showing to the Court, which may include employees of Plaintiff's related company Interparfums S.A.. The parties will limit the search terms to a listing of twenty (20) Search Terms (which may contain Search Term strings) related to relevant issues for the purposes of locating potentially responsive Documents. Focused terms, rather than over-broad terms (e.g., product and company names only), shall be employed. The parties reserve the right to object to the extent Search Terms result in an unreasonable and unduly burdensome number of hit counts, provided the party asserting the objection provides hit counts resulting from each Search Term. Disclosure of these hit counts will not result in waiver of any privileged subject matter. The parties' individual searches will be limited in accordance with their respective objections to each parties' requests for production.

4. **PROCEDURES FOR RESPONDING TO DISCOVERY REQUESTS**

  a. Utilizing Search Terms for production of ESI is a method to assist with the production of relevant and responsive information but does not supplant a party's need to otherwise produce documents or things responsive to discovery requests.

  b. Parties need not specify the particular request(s) to which a produced document is responsive, provided the production format specifications of this agreement are met.

c.      Except as set forth in the Protective Order, on-site inspections of electronic information system under Fed. R. Civ. P. 34(b) shall not be ordered absent good cause and demonstration of specific need.

**5.      DOCUMENT AND ESI PRODUCTIONS**

   a.      **Format for ESI**

ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF) or as Native Format files. When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI, i.e., the original formatting, the Metadata (as noted below) and, where applicable, the revision history. The parties may produce their information in the following format: pdf files or single page TIFF images of at least 300 dpi resolution and associated multi-page text files containing Extracted Text or OCR with Concordance and Opticon Load Files containing all requisite information including relevant Metadata.

Any document containing color images for which color is critical to the document should be produced either natively or as single page color jpegs (.JPG); if color is not critical then the document should be produced in black and white. If after reviewing a black and white document, a Receiving Party believes that color is critical to a document, the parties agree to engage in discussion regarding production of discrete documents in color, which production will not be unreasonably withheld.

The parties agree to exercise reasonable efforts to maintain all collected Native Format files that may be relevant to this litigation in a manner that does not materially alter or modify the files or the Metadata. The parties agree to produce video files, audio files, database files, CAD drawings, Microsoft Excel or other spreadsheet files, or other files than cannot be readily coverted

to TIFF format in their Native electronic format and should contain the Bates number and confidentiality designation of the file in the file title.

If a document is produced in Native Format, multiple documents may be combined into a zip file instead.  Each Native Format file should be named according to the Bates number it has been assigned.  To the extent that any party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in Native Format, the parties agree to meet and confer in good faith.

Documents that exist solely in physical hardcopy format will be converted and produced following the same protocols outlined in this section, unless the Producing Party objects due to cost, in which case the parties shall meet and confer. The searchable corresponding text files will be named to match the Bates number for each document. In scanning paper documents, the Producing Party shall use reasonable efforts to preserve the logical unity of documents, i.e., distinct documents should not be merged into a single record, and single documents should not be split into multiple records. For documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document.  The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.

The Parties may utilize industry standard file exclusion, including the NIST list (www.nsrl.nist.gov) to remove system and other executable files from productions. Additional culling of file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf),

Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.

A Producing Party shall produce documents that it produces in an electronic form via secure FTP transfer, or, if secure FTP transfer is not practicable in a particular instance, via an encrypted CD-ROM, DVD, external hard drive (such FTP transfer, CD-ROM, DVD, and hard drive collectively, the "Production Media"). An encryption key or password shall be transmitted under separate cover contemporaneously with sending the encrypted media. Information that shall be identified on the physical Production Media, or via electronic communication in the event of FTP transfer, shall include: (1) a reference to this case name and/or number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, and where not practicable to do so may be provided in an accompanying letter.

    b.    **De-Duplication**

Each party may undertake reasonable efforts to apply standard global deduplication to all electronic documents collected from their custodians, provided they identify all associated custodians of the document whose copy is not being produced, and any duplicate file path information in the appropriate Metadata field of their Load Files, separated by semi-colons. When performing de-duplication, the parties may use MD5 or SHA-1 hash values at the family level. In other words, in the case of Emails, a parent Email along with its associated attachments is considered a single document for purposes of deduplication, and attachments should not be

eliminated as duplicates for purposes of production, unless the parent Email and all attachments are also duplicates. The parties agree that an Email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an Email that does not include content in those fields, even if all remaining content in the Email is identical.

  c. **Metadata**

The parties are only obligated to preserve or provide the following Metadata for all ESI produced, to the extent such Metadata exists: File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Time Created, Date Modified, Time Modified, MD5 Hash, File Size, and File Extension. Database Load Files that are provided shall also include the following generated production data (or equivalents thereof): Custodian, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, Attachment End, and Confidentiality.

**6. PRIVILEGE LOGS**

The parties agree to dispense with a privilege log in its entirety for documents exchanged between a party and its counsel of record in this case. Absent good cause, the only such documents required to be logged are those that are clawed back by a party after production in this matter. Other documents for which a claim of privilege or protection is made shall be itemized on a privilege log served within ten (10) days following service of the the discovery response in which the claim of privilege is made.

**7. AMENDMENTS AND DISPUTES**

Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents. The parties agree to negotiate in good faith any issues, which arise concerning the terms of this agreement, or any other issues that arise in the course of

document productions during the litigation. Parties shall meet and confer regarding requests to seek additional documents outside the scope of this agreement and/or to seek to revise the terms of this agreement if an issue arises regarding the economic value of the production and/or the technical ability to review and/or produce pursuant to this agreement. If the parties are unable to agree, need further clarification on any issue covered herein, or require modification of this stipulation, any party may seek appropriate relief from the Court (after meeting and conferring in good faith).

8.  **DOCUMENTS PROTECTED FROM DISCOVERY**

    a)    Pursuant to Fed. R. Civ. P. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

    b)    A communication need not be listed on a privilege log if: (i) it is solely between a Party and its trial counsel or solely between a Party or its trial counsel and other counsel with whom trial counsel has a joint defense or community of interest agreement regarding Plaintiff's claim; and (ii) the communication occurred on or after April 20, 2023. Notwithstanding the foregoing, any attachment or portion of a such a communication that was created prior to the filing the complaint in this case that is otherwise discoverable may not be withheld on the basis privilege or protection. For example, a trademark search or clearance report created prior to the filing of the complaint may not be withheld and must be produced even it is attached to or included in a communication dated on or after April 20, 2023.

9. **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

Dated: February 28, 2024                         Respectfully submitted,

/s/ Peter S. Sloane                              /s/ Armin Ghiam
Peter S. Sloane (PS7204)                         Armin Ghiam
Robert M. Isackson (RI4303)                      HUNTON ANDREWS KURTH LLP
Emily A. Rice (*pro hac vice*)                   200 Park Avenue
LEASON ELLIS LLP                                 New York, NY 10166
One Barker Avenue, Fifth Floor                   Tel.: (212) 309-1000
White Plains, NY 10601                           Fax: (212) 309-1100
Tel: (914) 288-0022                              Email: aghiam@HuntonAK.com
Fax: (914) 288-0023
Email: sloane@leasonellis.com;                   *Counsel for Defendants,*
isackson@leasonellis.com                         *Renee Gabet and*
rice@leasonellis.com                             *Annie Oakley Enterprises, Inc.*
lelitdocketing@leasonellis.com

*Attorneys for Plaintiff*
*Interparfums Luxury Brand, Inc.*

IT IS SO ORDERED, this 8th day of March, 2024.

_____
HONORABLE P. KEVIN CASTEL
UNITED STATES DISTRICT JUDGE

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in Metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of or prior versions of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.